

COPY

UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

PAUL CAYER                              :
                                        :
            Plaintiff                   :
                                        :    Civil No.3:02cv1130 (HBF)
V.                                      :
                                        :
JAMES ROACH, ET AL.                     :
                                        :    October 28, 2003
            Defendants                  :

**DEFENDANT JAMES ROACH'S ANSWERS AND RESPONSES TO PLAINTIFF'S FIRST SET OF INTERROGATORIESAND REQUESTS FOR PRODUCTION**

COMES NOW defendant James Roach and for his answers to the plaintiff's interrogatories and request for production of documents, states as follows:

**INTERROGATORIES**

1.    Identify, by name, address and job title, each individual who may be called to testify in your defense at the trial of this action and for each individual state the following:

    a.    The fact, event or occurrence to which he/she is a witness;

    b.    Whether he/she has given a statement;

    c.    The location and custodian of the statement;

    d.    A complete description of the anticipated testimony of such individual.

1

**Answer:**    Defendant objects to this interrogatory as calling for attorney client and attorney work product information. This defendant does not know who may be called as a witness at trial.

    2.       Identify any expert witness whom you may call in your defense at trial, describe his/her opinion, the substance of the opinion to be rendered, a list of his/her publications and the civil cases in which he/she has served as an expert witness.

**Answer:**  Unknown at this time.

    3.       Identify every individual, whether or not he/she may testify at trial, who possesses any information or is a witness to any fact, event or occurrence which you believe rebuts any of the plaintiff's factual allegations as set forth in his Complaint. For each such individual, state the fact, occurrence, event or information about which such individual has knowledge.

**Answer:**    The defendant objects to this interrogatory as vague and overly broad. Without waving the aforementioned objection, see Exhibit A attached hereto that lists witnesses that MAY have information pertinent to this case. This defendant makes no

2

representation that the attached list is exhaustive, nor that he has interviewed the people on the list. Except for Dr. Roach's own information and that of Charles Spiridon, the remaining information is speculative based on this defendant's personal recall from his personal involvement in certain events.

4.     State the amount of the salary increase awarded, in or about July of 2001, to the following individuals:

a.     Debbie Bonfietti, Jeanne Hurgin and Laurie Hunley;

b.     If the salary increase awarded to each such individual was 3.50% or lower, state fully the reasons for the amount of the increase, including particular problems, if any, with the individual's performance or disciplinary issues.

**Answer:**    a.  Debbie Bonnefietti      3.0%

Jeanne Hurgin           3.5%

Laurie Hunley           No such person on WCSU payroll

b.  Ms. Bonnefietti's and Ms. Hurgin's increases were based on work performance during the preceding  year.

5.     Provide detailed information regarding workplace violence and/or misconduct investigations respecting the following individuals:

3

a.    Barbara Casner;

b.    Carl Mason;

c.    William Walton;

d.    Patricia Hawkins;

e.    Alan Jones;

f.    Leonard Silva;

g.    Patrick Harshaw;

h.    Anthony Gueli;

i.    Lester Terriol;

j.    Eugene Tosetti;

  k.  George Repasky;

  l.  Americo Vendianha;

  m.  Frank Arnone;

  n.  William Almasy;

  o.  Paul Simon.


**Answer:**

<u>Barbara Kastner and Carl Mason</u>:

a. Harassment ; 2/19/99
b. Misunderstanding between two employees
c. No.
d. No.
e. No.
f. Jim McNiff/Ron Shaw/Paul Cayer
g. Unknown

<u>William Walton</u>:

a. verbal confrontation with contractor; Spring 1998 or 1999
b. unknown because contractor never filed complaint
c. No.
d. No.
e. No
f. unknown because no complaint was filed
g. NA

<u>Patricia Hawkins and Alan Jones</u>:

a. Verbal threat; 5/28/99
b. Inappropriate language, no substantiated threat; verbal admonishment

c. No.
d. No.
e. No.
f. Ron Shaw
g. Ron Shaw

Patricia Hawkins and Leonard Silva:

a. Demonstrated choke hold during training class; 3/20/96
b. Officer Hawkins was responding to physical jostling by male officer during training
   class; no discipline imposed
c. No.
d. No.
e. No.
f. Ron Shaw/Lt. Connors
g. Ron Shaw

Patricia Harshaw and Andrew Gueli:

a. verbal abuse and threat of bodily harm; 3/20/96
b. substantiated verbal threat and verbal abuse; suspended without pay 15 days
c. No.
d. No.
e. No.
f. Richard Sullivan, Vice President
g. Human Resource Department

Lester Terrell and Eugene Tosetti:

a. Abusive conduct towards co-worker; 6/24/96
b. substantiated abusive and offensive language; suspended for two days without pay
c. No.
d. No.
e. No.
f.  Paul Cayer/ Richard Sullivan
g. Human Resources Department

George Repasky and Americo Vendinha:

6

a. Abusive language towards co-worker; 6/15/89
b. substantiated; suspended for three days without pay
c. No.
d. No.
e. No.
f. John Jakabauski
g. Human Resources Department

Frank Armone and William Almasy:

a. striking another employee; 6/15/89
b. substantiated, suspended for three days without pay
c. No.
d. No.
e. No.
f. Richard Sullivan, Vice President
g. Human Resources Department

Paul Simon:

a. verbal abuse and allegedly threw glass of wine on a food service worker; 5/31/02
b. substantiated that employee lost temper, but did not throw wine at food service worker; issued written warning
c. No.
d. No.
e. No.
f. Charles Spiridon
g. Human Resources Department

6.    For each of the individual named in Interrogatory #5, identify and describe the

following:

a.    The nature of the allegations against him/her, the identity of the

complainant and the date of the complaint.

b.    A summary of the findings resulting from any investigation into alleged

improper conduct on the part of each such individual, and the action

taken as a result.

c.    Whether the University required a psychiatric or other evaluation of any

individual involved.

d.    Whether the university removed any individual from the workplace or

placed him/her on paid or unpaid leave pending the results of an

investigation.

e.    Whether any complainant, accused or witness was subjected to a tape-

recorded interview.

f.    The identity of the decision-maker(s) with respect to any disciplinary or

other action taken in consequence of an investigation; and

g.    The identity of the custodian of any documents generated in connection

with such investigations and the location of such material.

**Answer:** See answer to interrogatory No. 5.


7.    Describe any and all steps taken, conferences had or communications engaged

8

in with respect to plaintiff's allegation that the university was noncompliant

with state or federal laws regarding the reporting of the immigration status of

university employees.

**Answer:**    The defendant objects to this interrogatory as overly broad, irrelevant and

vague. Without waving the aforementioned objection, the defendant did not directly handle

this issue. The matter was turned over the CSU auditors who conducted an investigation and

reported their findings.  The results of the auditor's findings were communicated to the

President.

8.    Identify and describe each document or tangible item which you may <u>offer into</u>

evidence at the trial of  this action and for each such item disclose the date,

author and content of  any document, and the factual allegation of the

complaint to which it relates or which such document serves to contradict or

rebut.

**Answer:**    Object as overly broad and calls for information protected by the attorney client

and attorney work product doctrine. Without waving the aforementioned objection, this defendant

states that he does not know what exhibits counsel may contemplate using at trial.  Hundreds of

pages of documents will be produced for inspection by plaintiff's counsel in response to these

discovery requests, any one of which could conceivably be used at trial.

9

9.    Identify any internal memoranda, notes or other interdepartmental or

interagency correspondence between you and any other university employee or

state official as it relates to the plaintiff, his performance or any of plaintiff's

allegations as set forth in his complaint.

**Answer:**  Defendant objects to this interrogatory as vague, overly broad and burdensome.

Hundreds of pages of documents including emails, memoranda, correspondence, reports

evaluations, etc. that may be responsive to this overly broad request are available for

inspection at the office of the Attorney General at a mutually prearranged time.


**Request for Production**

1.    Produce any and all documents or tangible items identified in response to any

of the foregoing interrogatories.

RESPONSE:   See defendant's answer to interrogatory number 9.


2.    Produce any and all documents, of whatever kind and description, generated in

connection with any workplace violence investigation or investigation of

employee conduct or improper behavior identified in response to

interrogatories # 5 and 6.

RESPONSE:   These documents will be produced at the Office of the Attorney General for

10

inspection at a mutually prearranged date.

     3.     Produce any and all service ratings or performance reviews relating to the

           performance of the individuals identified in Interrogatory #4 for the

           performance period related to the salary increase(s) awarded in the summer of

           2001.

RESPONSE: These documents will be produced at the Office of the Attorney General for

inspection at a mutually prearranged date.

     4.     Produce any and all documents or any communications generated by Barbara

           Barnwell or Dr. Anim-Wright regarding the plaintiff and any communications

           regarding Helen Main.

RESPONSE: Object as overly broad and burdensome. The plaintiff was employed for a

number of years making this request unrealistically broad. To the extent this request can be

narrowed in scope and time pertinent to the issues in this lawsuit, the defendants will attempt

to comply with this request to the extent that the hundreds of pages of documents produce for

inspection in connection with interrogatory number 9 is insufficient.

     5.     Produce any and all communications between you and John Jakabauski which

concerned the plaintiff in any way.

RESPONSE:   Object as overly broad and burdensome.  The plaintiff was employed for a

number of years making this request unrealistically broad.  To the extent this request can be

narrowed  in  scope and time pertinent to the plaintiff,  the defendant will attempt to comply

with this request to the extent that the several hundred pages of documents produced for

inspection in connection interrogatory number 9 is insufficient.


      6.      Produce any and all communications between you and Charles Spiridon which

           concerned the plaintiff in any way.

RESPONSE:   Object as overly broad and burdensome.  The plaintiff was employed for a

number of years making this request unrealistically broad.  To the extent this request can be

narrowed  in scope and time pertinent to the issues in this lawsuit, the defendant will attempt

to comply with this request to the extent that the several hundred pages of documents

produced for inspection in connection interrogatory number 9 is insufficient.


      7.      Produce any and all communications between you and William Cibes which

           concern the plaintiff in any way.

RESPONSE:   Defendant Roach is not aware of any such communications, but in checking the

records if some are disclosed, they will be produced for inspection.


12

8.    Produce any and all communications between you and any state auditor or

employee in the Office of the State Auditor regarding the plaintiff.

RESPONSE:  Documents responsive to this request will be produced at the Office of the

Attorney General for inspection  at a mutually prearranged date.


9.    Produce any and all job descriptions for the plaintiff's position.

RESPONSE:   These documents will be produced at the Office of the Attorney General for

inspection at a mutually prearranged date.

13

10.    Produce any and all anti-discrimination policies in place at WestConn during the plaintiff's employment along with any and all documents, regulations, manuals, policies and like material setting forth or speaking to the obligation of a Director of Human Resources to eradicate illegal employment discrimination in the work place.

RESPONSE:  Object to this interrogatory as vague and calls for an interpretation that this defendant cannot make. However, the anti-discrimination policies in placed at WesConn during the past five years will be produced at the Office of the Attorney General for inspection at a mutually prearranged date.

11.    Produce a job description for the position held by Charles Spiridon and any other documents which speak to his authority with respect to the adjustment of employee grievances or the University's response to complaints of illegal employment discrimination.

RESPONSE:  Object to this request because it calls for an erroneous assumption or conclusion. The defendant will produce copies of the job description for the position held by Charles Spiridon for inspection at the Office of the Attorney General at a mutually convenient time.

12.    Produce any and all statements of witnesses to any fact, event or occurrence

14

which is the subject of plaintiff's complaint.

RESPONSE:  Object to this request because the term "statement" is overly broad and vague.

To the extent that this request can be clarified or narrowed, the defendant will attempt to

comply with this request to the extent that the several hundred documents in response to

interrogatory number 9 is insufficient.


13.     Produce any and all documents or items that you might introduce in your

defense of the trial of this action.

RESPONSE:  Object as overly broad and calls for information protected by the attorney client

and attorney work product doctrine.


                              DEFENDANT JAMES ROACH,

                              RICHARD BLUMENTHAL
                              ATTORNEY GENERAL


                    BY: _____
                              Joseph A. Jordano (ct 21487)
                              Assistant Attorney General
                              55 Elm Street
                              P.O. Box 120
                              Hartford, CT 06141-0120
                              Tel: 860-808-5340
                              Fax: 860-808-5383


                              15

## **CERTIFICATION**

The undersigned does hereby certify that on October 28, 2003, the original of the

foregoing was hand delivered to the following:

Karen Lee Torre
51 Elm Street, Suite 307
New Haven, CT 06510

_____
Joseph A. Jordano
Assistant Attorney General

16

## VERIFICATION

James Roach, being duly sworn, deposes and says:

14.   I am the defendant in the above-referenced matter.  I am fully familiar with the

facts set forth herein.

15.   I have read the foregoing answers to Plaintiff's First Set of Interrogatories.  I

hereby verify that the foregoing answers are true to the best of my knowledge and

belief.

JAMES ROACH

Sworn to before me this 28

day of October , 2003.

My Commission Expires:      MARGARET BOYLE
                            *NOTARY PUBLIC*
                            MY COMMISSION EXPIRES MAR. 31, 2008

18

"EXHIBIT A"

## INTERROGATORY NO. 3.

**Anim-Wright, Koryoe** – Director of Public Relations – WSCU – Familiar with Helen Main; had interactions with Paul Cayer regarding Helen Main; is familiar with the part time student worker with whom Cayer compared Helen Main; the adverse arbitration award rejecting Helen Main's and Cayer's position of discrimination; Cayer's irrational behavior towards her.

**Barnwell, Barbara** - Executive Assistant to the President for Disability & Multicultural Services – Helen Main's supervisor;  familiar with the University's diversity and sexual harassment training program; Paul Cayer's CHRO complaint against the University;  the circumstances giving raise to the sworn testimony of Carla Netto; interactions with Cayer, clerical union and other university personnel.

**Barth Sherry** – CSU Internal Auditor – Audited the whistle blower complaints filed by Mr. Cayer in October 2000 regarding alleged irregularities with the Financial Aid Office and Dr. Amin-Wrights comp time records.

**Boyle, Margaret** (Peggy) – Administrative Assistant in HR – replaced Barbara O'Brien.; worked in HR office with Paul Cayer and witnessed his interactions with staff and Charles Spiridon.

**Caruso, John** – Professor of Education  -  received and exchanged various emails with Paul Cayer.

**Cibes, William** – Chancellor of the CSU System – Should be familiar with emails forwarded to him by Paul Cayer; may be familiar with the CSU procedure utilized for handling the report or potential workplace violence involving Paul Cayer; newpaper articles and email from Paul Cayer; Letter from the CSU Board to Cayer.

**Connor, Roger** – Police Lieutenant – friend of Paul Cayer;  Informed his suopervisor od statement by Paul Cayer of fantasies about beating Charles Spiridon; received emails or correspondence from, by or to Cayer.

**Cratty, Fred** – Director of Employee Relations – witnessed Paul Cayer's behavior and interactions with Dean Spiridon and the office staff;  is familiar with the grievance process for classified employees in the unions for clerical, maintenance and protective services;  familiar with Dean Spiridon's management style and demeanor.

**Durnin, Ellen** – Dean of Graduate and External Studies – became Paul Cayer's supervisor upon his return from work after the paid administrative leave following the Threat Assessment Report and psychological exam; is familiar with service rating she gave to Paul Cayer while he was under her direct supervision; Cayer's job duties while under Durnin's supervision; conversations with Dr. Roach.

**Fensterer, Carolyn** – Secretary 2 for the Communications, Theater Arts department – clerical union steward at the University; represented Helen Main in the grievances she brought against the University; received and sent emails to Cayer.

**Hagan, Edward** – Professor of English – received and/or exchanged emails with Cayer.

**Hawkins, William** (Bill) – Enrollment Management Officer – familiar with Paul Cayer's whistleblower complaint in October 2000; the audit conducted by the CSU auditors; emails from or by Cayer.

**Jakabauski, John** – Former Dean of Human Resources – familiar with Paul Cayer having worked with him; is aware of conversations he (Jakabauski) had with President Roach and Paul Cayer; received emails from Cayer; familiar with union's role in grievance; conversations with Cayer about his conduct.

**Lengel, Alisa** – Personnel Assistant in HR – received emails from Paul Cayer.

**Main, Helen** – Secretary 1 – CHRO and Arbitration proceedings and rulings regarding issues she raised; exchanged emails with Cayer; conversations with Cayer.

**Marquez, Ernie** – Former Executive Office for Human Resources at the CSU System Office – received emails from Cayer.

**Meisler, Dr. Andrew** – Psychiatrist – Conducted psychological exam of Paul Cayer in connection with the Threat Assessment Report.

**Melendez-Thiesfield, Yvette** – Executive Administrative Officer for CSU System – Arranged for CSU auditors to  investigate Cayer's whistleblower complaint and directed the handling of the workplace violence issue involving Paul Cayer; familiar with some emails and correspondence from and to Cayer.

**Netto, Carla** – Former Office Assistant in the HR Office –  Exchanged numerous emails with Paul Cayer; testified at her request about requests by Paul Cayer that she testify against Barbara Barnwell and other university officials.

**O'Brien, Barbara** – Former Administrative Assistant in HR – may be aware of untruthful reports to newpaper that she retired because Charles Spiridon drove her out.

**Ricciardi, Hildy** – Secretary 1 in Admissions Department – A campus steward for the Administrative Clerical bargaining unit; represented Helen Main in the grievances she brought against the University; sent and received various emails from Cayer during work hours.

**Roach, James** – President – Is familiar with his interactions with Paul Cayer; Cayer's allegations in this lawsuit; his complaints against the financial aid office in October 2000; the merit increased given to management level employees; some of Paul Cayer's conduct involving Helen Main; disparaging statements of University personnel about the Dean of Human Resources;  his conversation with John Jakabauski regarding Cayer; that there was no alleged threat to fire Cayer; Cayer's irrational behavior towards Dean Spiridon; the CSU investigation into Cayer's statement about harming Dean Spiridon; reason for Cayer being moved to another office within the university; the 2003 diversity and sexual harassment training and retraining; the results of the CSU auditor's report regarding the financial aid office.

**Rudewicz, Frank**-  Decisions Strategy, LLC.-  Referred CSU to Dr. Meisler to conduct evaluation of Paul Cayer.

**Shaw, Ronald** – Associate VP for Public Safety – Person to whom Roger Conner reported Mr. Cayer's fantasy about beating Charles Spiridon up; designated to conducted the threat assessment report and recommended that Mr. Cayer go for psychological examination.

**Spiridon, Charles** -  Dean of Human Resources -  Supervisor of Paul Cayer; the Helen Main issue; Cayer's response to direct supervision, Cayer's irrational and disruptive behavior in the office; the Helen Main CHRO proceeding and adverse arbitration rulings; the existence of Cayer's work place violence statement; other alleged incidents of misconduct that Cayer characterizes as workplace violence; the reasons for Cayer's reassignment to another office; Cayer's relocation to another office in the Human Resources Building; the condition of Cayer's office in the lower level of the building; Cayer's intentionally disruptive behavior in the HR office; complaints by staff who were concerned about Cayer's behavior;  Cayer's refusal to perform assigned tasks; no threat to fire Cayer; Cayer's disclosure of confidential information to the union; Cayer's conduct that made him untrustworthy and incapable of representing the university's interest in grievances involving the clerical union; changes made to Cayer's job duties resulting from his behavior; Cayer's 2000 and 2001 service ratings; Cayer's use of university time and equipment to make disparaging remarks about university officials.