RECEIVED

UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

PAUL CAYER,

    Plaintiff,

v.

JAMES ROACH and
CHARLES SPIRIDON,

    Defendants.

: CASE NO. 3:02CV1130(HBF)
:
:
:
:
:
:
:
: July 24, 2004.

FILED

2004 JUL 30 P 3: 53

U.S. DISTRICT COURT
BRIDGEPORT, CONN.

PLAINTIFF'S APPEAL TO JUDGE HALL OF JUDGE FITZSIMMONS' DISCOVERY RULINGS OF July 14, 2004.

[ Please note I cannot double-space or adjust margins since I do not have a computer, but only a WebTV internet appliance. I am doing the best that I can with the equipment I have.]

As the plaintiff, I am appealing the entirety of Judge Fitzsimmons Discovery Rulings of July 14, 2004 (Att. #1) which also incorporated an order issued at oral argument on July 6, 2004 concerning production of my personal emails.

Judge Fitzsimmons' recent rulings and statements in Court exhibit an extremely biased attitude in favor of the defendants and against me which I feel results either from a personal relationship with my former attorney Karen Torre or with improper communications with her after I fired her. Let me explain: Please refer to a letter Atty. Torre sent me March 26, 2004 (Att. #2) after I fired her. There is something very sinister in this letter. She is talking in the second paragraph about what items from my file she will be transferring to me. She states, "I do not know if you have a copy of your psychiatric treatment records: if you do not, I will make copies and send them to you." Your Honor, Atty. Torre obtained my psychiatric records directly from my psychiatrist, and not from me; this is consistent with normal practice. Patients almost never have, or want to have, copies of their psychiatric records. There are cases where psychiatrists can legally withhold records from a patient if the doctor believes releasing them to the patient would harm him. I knew Attorney Torre was up to no good, and I replied to her letter with a list of items I needed (Att. #3), but did not list the psychiatric records. Imagine my shock and consternation when Attorney Torre sent me my psychiatric records anyway! I understand now, that one of her reasons for sending them to me was so that they would be more vulnerable to discovery by being in my possession.

On July 6, 2004, at a Court hearing in my case, Judge Fitzsimmons made some interesting statements which clearly indicated she had communicated with Attorney Torre improperly. If you read the transcript of that hearing you will see that Judge Fitzsimmons asked me if I had obtained all the documents from my file from Attorney Torre - had she sent me my psychiatric records, the judge asked. Since psychiatric records are returned to psychiatrists and never to patients, Judge Fitzsimmons could only have asked the question in that way if she had had communication with Atty. Torre. I replied to the judge that it was very interesting that Atty. Torre had sent the records to me when she had received them not from me but from my psychiatrist. I told the judge - twice, I believe - that that was very inappropriate. The judge had no comment. I then mentioned that I still had not received many documents such as judge's orders or schedules that I had repeatedly over two years requested she send to me but never did (see Att. #4). The judge had no comment and did not offer to assist me in this regard. The judge then asked if I still had the psychiatric records and I told her I gave them to Dr. Romanos. Your Honor, these statements by the judge tell me that she has been having improper and unethical communications with Atty. Torre. Judge Fitzsimmons was clearly hoping to find the records in my possession, thereby making them more vulnerable to discovery. It also tells me that Judge Fitzsimmons fails to see anything wrong with Atty. Torre's actions. It also raises the question of whether Judge Fitzsimmons was party to this improper action. This issue alone convinces me that I absolutely cannot trust Judge Fitzsimmons with my medical records.

Another incident that is very telling is Judge Fitzsimmons "winking" at certain serious wrong-doing

by AAG Jordano which by right ought to result in his removal from the courtroom. Instead, Judge Fitzsimmons characterizes these as non-issues or misunderstandings. One of the most blatant issues involves AAG Jordano issuing a writen statement to the Court on July 6, 2004 which represented the defendents' position on outstanding discovery issues (Att. #5). In this written statement, he lied about the whereabouts and employment status of defendant James Roach by stating that Roach had already retired to Florida. I had been trying for months to get him deposed, and AAG Jordano was telling the Court that he was no longer in Connecticut. I challenged this in Court, since my sources had told me Roach was still in Connecticut and still working at WestConn. Sitting right next to AAG Jordano in court was defendant Spiridon, who reports to Roach and works in the same building. Spiridon whispered something to Jordano and then Jordano stated he had made a mistake - Roach was still in Connecticut and still at WestConn. Attachments 6 and 7 show my complaint to the judge, AAG Jordano's response, and then my retort. Any unbiased person looking at these facts would have to conclude that AAG Jordano was deliberately lying to the Court. His claim they he never even shared the defendants' position statement with the defendants, even though he met with defendant Spiridon immediately prior to the hearing is ludicrous. Yet, Judge Fitzsimmons called it a "misunderstanding." I believe Judge Fitzsimmons was a party to this misrepresentation as well, which explains why she didn't sanction it. Your Honor, my motion to depose defendant Roach and Barbara Barnwell languished for over three months; Judge Fitzsimmons waited until July 6, 2004 to address this, which was days after Roach's ostensible retirement to Florida. Clearly, Judge Fitzsimmons was party to this attempt to make it impossible for me to depose Roach. Then she issued a ruling denying me the right to an in-person deposition and ordering that I produce medical records, interrogatory questions, and other items WITHIN THREE DAYS OF MY RECEIPT OF HER RULING!! This is so blatantly contrived and designed to favor the defendants that I consider it an outrage. All of a sudden, there was a great urgency to comply with an arbitrary Aug. 1st close of discovery date which meant that I had to comply with a compressed and expedited timeframe.

In the matter of AAG Jordano's attempt to conceal evidence from me, specifically, a letter from a disabled employee of Barbara Barnwell (Att. #8 and #7) which was very damaging to the defendants, Judge Fitzsimmons concludes there was no harm done, that I eventually obtained the document. The judge totally ignores the fact that this was evidence obtained by Jordano at a deposition which he was obligated to share with Atty. Torre but did not. She totally ignores AAG Jordano's lie that the document was given to the University and not him. She totally ignores the fact that had I not become aware of the document through another party, I would never have known to question Attorney Jordano about it. Yes, I was finally able to obtain the document, but only with difficulty, and only by chance. Would Judge Fitzsimmons argue that if a thief is forced to return stolen property, that confers absolution upon the perpetrator?

For the reasons enumerated above, I maintain that not only has Judge Fitzsimmons been biased in my case, but she has, in fact, been corrupt. Your Honor, I did not fire a crooked lawyer so that I could argue my case pro se in front of a corrupt judge. Although it may shock you to hear me call her corrupt, please remember that not very long ago there was a great hue and cry after some were so bold as to say our own Governor was corrupt. These things happen, and they happen in very high places, and yes they happen to judges too.

Let me briefly explain why I fired my attorney Karen Torre. She lied to me repeatedly, was lazy, ignored deadlines, refused to send me copies of all legal documents in my case, refused to attend three depositions in person, instead participating only by speaker phone, did not return phone calls (even AAG Jordano's phone calls), kept me in the dark about many discussions she had with opposing counsel, lacked a basic understanding of my case, and was frequently rude and insulting to me. The final straw was when I demanded that she amend my complaint to include the entirety of my whistleblower allegations; she stalled and stalled, finally amended the complaint without even getting my input, and then filed it WITHOUT LETTING ME SEE IT BEFOREHAND. To my astonishment, the amended complaint still did not include the entirety of my allegations, and she wouldn't give me a straight answer as to why. I understand now that this was because of the sweetheart arrangement she had with AAG Jordano, who obviously would not agree to let her amend it in any way that would be helpful to me. This sweetheart arrangement was most definitely detrimental to a favorable adjudication of my case (Att. # 9). She all but advertised her unwillingness to take my case to trial. Consequently, she was never able to elicit from the defendants any settlement offer or counter offer of any kind. Only when I fired Atty. Torre (but before her withdrawal was approved by the Court) was there a flurry of activity by the defendants all of a sudden very eager to talk to me, obviously to try to fashion some sort of a settlement to reward Atty. Torre for playing along with opposing counsel. Interestingly, when I complained to the judge about this, she had no comment. AAG Jordano lied to the Court to cover-up this sweetheart arrangement (Att. #10). Again, Judge Fitzsimmons had no comment. Of interest to the Court is the fact that Atty. Torre took two weeks from the day I fired her to file a motion to withdraw, and Judge Fitzsimmons took another two weeks to approve the motion, thereby keeping Atty. Torre as attorney of record in my case for almost a full month after I fired her.

I would like to now address each of Judge Fitzsimmons' Discovery Rulings:

## DISCLOSURE OF PERSONAL EMAILS

At oral argument on July 6, 2004, Judge Fitzsimmons ordered me to produce all of my personal emails on my WebTV home internet appliance to and from WCSU employees concerning my lawsuit. It wasn't until I received the discovery rulings on July 15, 2004 that I was informed of my right to appeal this order. I had argued that this was an invasion of my privacy in that in these emails I had discussed strategy for pursuing my case. I also argued that these WestConn employees, many of whom were my friends, would now be vulnerable to retaliation by the University, specifically by defendant Spiridon who is Dean of Human Resources. Mr. Spiridon has already retaliated against individuals he has perceived to be my supporters. At oral argument, the judge seemed to have little interest in the likelihood of retaliation. When I informed the affected individuals of the Judge's order, they were almost without exception extremely angry and totally opposed to such an invasion of their privacy for the very transparent reason of Spiridon's desire to punish those who supported me. One talked of litigation. In this regard, the Attorney General's Office has allowed itself to be used by Spiridon so that he may carry out his personal vendettas. Although there is nothing in the emails which would contradict any of the whistleblower allegations I made, or any of my claims of retaliation, some certainly could provide fodder for Mr. Spiridon to wreak havoc on these employees' careers. He has already done this with others besides me. For these reasons, and because the defendants have failed to articulate a compelling justification for disclosure of these emails which would override the privacy concerns, I object to this disclosure and ask Your Honor to reverse this ruling.

I find it extremely interesting that my former attorney Karen Torre did NOT object to defendants' request for these personal emails, and yet did NOT push for disclosure of the defendants personal emails - more evidence of the sweetheart deal between her and AAG Jordano.

## MY MOTION TO REOPEN DISCOVERY

Although my former attorney had asked me on several occasions to authorize her to conduct depositions, I declined. I was very unhappy with her performance and she had already told me to find another attorney. She had already refused to personally appear at three depositions, and participated by speaker phone only. On January 29, 2004 I wrote her (Att. #11) to ask if discovery was ongoing or had it closed Jan. 31st. She replied (Att. #12) that it was ongoing. I kew it HAD to be ongoing since she had just submitted a production request to the defendants. When I fired her, I immediately told AAG Jordano that I wanted to depose Roach and Barnwell. I knew I could do a better job deposing them than Atty. Torre. Jordano subsequently sent me a copy of the judge's order closing discovery Jan. 31, 2004. I had never seen it until then, since Atty. Torre never sent me those documents even though I had repeatedly asked her to. On March 29, 2004, I submitted a motion to continue discovery pursuant to my attorney's representation to me that it was ongoing. This motion languished on Judge Fitzsimmons desk for over three months. I became so frustrated at her not responding to me that I renewed my motion (Att. #14) and sent a letter (Att. #15) informing the judge that Roach was retiring and moving out of State on July 1st. I had a real concern that defendant Roach would move to Florida before I could depose him. (He had previously taken a trip to Africa to avoid testifying in my Whistleblower Retaliation case). Finally, the judge responded, but set up a hearing date that was AFTER Roach's ostensible retirement date. As previously stated, AAG Jordano lied at that hearing about Roach's whereabouts and Judge Fitzsimmons merely "winked." She subsequently ruled that I could NOT conduct a face-tface deposition, but could only submit written questions which Roach and Barnwell would respond to in writing. AAG Jordano was given the right to object to any questions. The timeframe for this was compressed into a matter of DAYS. Your Honor, this ruling is clearly outrageous, and reflects the bias of Judge Fitzsimmons towards the defendants. I deserve and demand the right to depose Roach and Barnwell in a face-to-face videotaped deposition. I was deposed face-to-face by the defendants, and they also deposed four others. I have had no depositions. Repeated requests by Atty. Jordano to extend discovery going back to last August have ben freely granted by Judge Fitzsimmons. Mine is a very reasonable request. I ask your Honor to reverse this ruling and allow me to depose James Roach and Barbara Barnwell face-to-face.

DEFENDANTS' MOTION TO COMPEL CONTINUED DEPOSITION OF PLAINTIFF

Judge Fitzsimmons has granted the defendants' motion that my deposition be continued. I have already been deposed by the defendants for an entire day almost a year ago. If I cannot depose Roach and Barnwell face-to-face, then I strenuously object to any continuation of my deposition. There is an implication that the deposition will include settlement issues, but I have already offered to have a settlement conference with the defendants and AAG Jordano has declined. I will not agree to be deposed again if I cannot have depositions myself.

MY MEDICAL RECORDS

Judge Fitzsimmons has ruled that I must provide ALL my medical records from ALL medical providers. This ruling is outrageous. At one point last year, Atty. Jordano had agreed NOT to pursue the issue of my psychiatric records if I was not going to pursue emotional distress damages (see Att. #12). I indicated to Judge Fitzsimmons that that was the case. Judge Fitzsimmons asked me if I planned to introduce psychiatric records and I told her no. There is no justifiable reason for defendants to ask to see decades of these records other than to invade my privacy and seek to embarrass me. The psychological evaluation prepared by Dr. Meisler is more than sufficient to demonstrate to the Court the state of my psychological health. As I have previously stated, I do NOT trust Judge Fitzsimmons with these records since she clearly lacks a fundamental understanding of how such records are to be handled. Given her obvious improper communication with Atty. Torre and her bias against me, I am convinced she would be inclined to misuse this information to my detriment. Defendants' claim that I was mentally unstable is absurd, and is disproved by their own psychologist's report. I am not aware, and neither was Atty. Torre (before I fired her), of any circumstances where a judge has forced a plaintiff to waive privilege and produce psychiatric records for such purposes. I strenuously object to presenting such records, even "in camera", and request that Your Honor reverse Judge Fitzsimmons' ruling in this matter.

MY MOTIONS TO SANCTION ATTY. JORDANO FOR LYING TO THE COURT

Your Honor, I request that you read attachments # 6, 7 and 8 concerning my charge that Atty. Jordano has told outright lies to the Court with impunity. Judge Fitzsimmons has merely "winked" at such conduct and calls it a "misunderstanding", saying that no harm has been done. Harm HAS been done. When attorneys are allowed to lie in Court with impunity, our justice system collapses and loses all integrity. I have maintained that Judge Fitzsimmons is not only biased, but actually corrupt in my case. I believe when Your Honor reviews the evidence I have provided, you will come to the same conclusions. I urge you to reverse Judge Fitzsimmons' rulings in these matters.

I believe the Judge should know that I have proposed to the defendants a settlement conference if both sides withdraw disputed motions, but Attorney Jordano was not interested.

WHEREFORE, the plaintiff urges the Court to reverse Judge Fitzsimmons' rulings in these matters. Should the Court see fit, the plaintiff would agree to attend a hearing on the record for the purposes of discussing my appeal.

PLAINTIFF

Paul N. Cayer, pro se
173 Old Burrville Rd.
Torrington, CT 06790
tel: 860-626-0340

CERTIFICATION

I hereby certify that the foregoing was mailed on July 24, 2004 to:

Joseph Jordano
Assistant Attorney General
55 Elm St.
PO Box 120
Hartford, CT 06141-0120

_____
Paul N. Cayer