UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | | |
|---|---|---|
| PAUL CAYER, | : | CASE NO. 3:02CV1130 (HBF) |
| *Plaintiff*, | : | |
| v. | : | |
| JAMES ROACH and CHARLES SPIRIDON, | : | |
| *Defendants*. | : | August 3, 2004 |

## DEFENDANTS' RESPONSE TO PLAINTIFF'S APPEAL

INTRODUCTION

The defendants will not respond to much of the senseless prattle that appears in Cayer's appeal. It suffices to say that Cayer's appeal or Motion for Reconsideration embodies the same childlike temper tantrum that he has engaged in before when people don't agree with him.  Cayer views the world through a prism of paranoia that results in distorted perceptions.  Cayer's unfounded and mean-spirited attack on the Court as "corrupt" is part and parcel to his pattern of behavior that mirrors his conduct while at WCSU.   There is no better example of his irrationality than his assertion that because the court inquired about whether Cayer had obtained his files from his former attorney, the court necessarily had inappropriately communicated with Attorney Torre.  Cayer has no evidence, just his wild hunches, to support such an assertion.

Cayer's appeal presents no new factual information or legal arguments that would justify the court reversing its July 12, 2004 ruling. Cayer's basic argument is that because the court didn't give him his way, the court must be "corrupt."  His reference to Attorney Torre's conduct is immaterial and superfluous to the court's July 12, 2004 ruling.

More striking is Cayer's ignorance of his own untruths and mistaken belief that he can simply ignore the court's directives because he or his friends don't agree. Defendants remind the court that during the July 6, 2004 hearing, Cayer told the court that he would forward the "few hundred" e-mails that he admits he has in his possession to defense counsel by July 13th. (Exhibit A, Transcript from July 6, 2004 hearing, p. 23:14-25)  He never even attempted to comply with the order. He sent an e-mail to various people outlining the court's directive that he turn over the e-mails (Exhibit B, E-mail from Cayer to WCSU employees, dated July 8, 2004) and then because his friends were upset, decided to willfully ignore the court's order. The deadline for compliance passed BEFORE the court's ruling was entered.  The only logical conclusion to be drawn is that Cayer willfully failed to comply with the Court's order regarding the e-mails.

His explanation about why he did not comply with the court's directive is equally ridiculous. Cayer has no evidence to support his willful contempt of the court, so he mischaracterizes the court as being indifferent to his speculation about potential retaliation by Dean Spiridon against those who wrote e-mails to Cayer.  In fact, when Cayer raised his concern about retaliation the court made a public statement  about the illegality of retaliation. (See Exhibit A, p. 25:1-19).  Furthermore, Cayer and his friends should not be able to dictate to the federal court what orders will or will not be complied with.  If any WCSU employees have concerns, they can do as Cayer advised them to be "vigilant and to take whatever actions are appropriate" if they suspect retaliation.  More likely, Cayer doesn't want the defendants to find out the extent to which he acted to impair the operations of the university's human resource office.

E-MAILS

The e-mails that Cayer possesses relating to the allegations in his lawsuit are potentially material to the case. The test for discovery is whether the information is reasonably calculated to lead to admissible evidence. Fed. Rule Civ. P. 26. The fact that Attorney Torre did not press the issue of the disclosure of personal e-mails does not bear on the issue of Cayer's disclosure. The court did not err in requiring Cayer to disclose the e-mails. The defendants requested the e-mails in discovery and Cayer did not respond until after the April 20, 2004 hearing. The defendants immediately moved to compel disclosure. The defendant are entitled to all information that complies with their discovery request as the court so ordered.

MEDICAL RECORDS

To defendants' knowledge, Cayer has not submitted his medical records to the court for *in camera* review as ordered. Nevertheless, Cayer's behavior since the July 6, 2004 hearing only further re-enforces the defendants' suspicion that Cayer has a long history of mental illness that could explain his paranoid behavior while working at WCSU. When Cayer gets angry, he casts libelous and slanderous statements towards others, such as his attack on this court. Nevertheless, the medical records have independent factual significance separate and distinct from the issue of emotional damages.

During the July 6, 2004 hearing, Cayer told the court that he would not call Dr. Romanos at trial, but that does not address Dr. Romanos' letter refuting Dr. Meisler's conclusions. Cayer claims that the defendants fabricated the workplace violence claim

and his risk level. The defendants may subpoena Dr. Romanos to testify, thereby making Cayer's records material to the case.

Second, the defendants submit that Cayer's records will support their perception in October 2002 that Cayer's behavior in the workplace along with his statement to a police officer about his "fantasy of beating up the Dean" more than justify the CSU system decision to place him on paid leave while it investigated the issue.

Lastly, the medical records are pertinent to the issue of Cayer's ability to secure employment as part of his legal duty to mitigate his damage on his constructive discharge claim.

## DEPOSITIONS

Cayer contends that his deposition should not go forward because the court did not permit him to conduct a face to face deposition of Dr. Roach. His objection has no legal basis and the court's decision to permit Cayer to depose Dr. Roach and Barbara Barnwell by written question was reasonable under the circumstances.

During the July 6, 2004 hearing, Cayer's only objection to his deposition pertained to the scope of the deposition. When asked if it was his impression that his last deposition had been concluded and all areas covered, his response was: "Not necessarily, no." (See Exhibit A, pp. 4:19-6:12). So Cayer has no substantive argument to support reversing the court's July 12, 2004 ruling.

Cayer's lack of legal training and reckless propensity of accusing others of conspiratorial conduct necessitates a controlled method to permit him to ask his questions of Roach and Barnwell. The court's use of Fed. Rule Civ. P. 31 serves the important purpose of eliminating both confusion and confrontation. Also, what questions could

4

Cayer ask Dr. Roach that he cannot present in writing? Cayer is not a lawyer familiar with the rules of procedure or evidence. Therefore, allowing him to conduct a deposition with no familiarity of the rules of evidence would be an invitation to confusion and conflict. These concerns require a measured approach that Rule 31 can accommodate.

### SANCTIONS

Cayer's motions for sanctions were properly rejected by the court because his conclusions were not supported by the evidence and amounted to a benign attempt to personally attack defense counsel. Defense counsel explained to the court the basis for his statements to the court that Cayer contends amounted to willful lying and the obstruction of justice.

Defense never concealed any evidence from Cayer regarding the letter by Judith Altman that was provided by witness Carol Fensterer after her deposition. Cayer's motion is frivolous. Contrary to Cayer's assertions, at defense counsel's request, Carol Fensterer gave the materials to Dean Spiridon after the deposition was completed. Dean Spiridon made copies and returned the originals to Fensterer. (See Exhibit C, E-mail from Charles Spiridon to Carol Fensterer, dated January 20, 2004). Fensterer acknowledged return of the information from Dean Spiridon. Furthermore, when Cayer visited the Attorney General's office in April 2004, he was given a copy of the letter after defense counsel requested a copy from Dean Spiridon because counsel could not recall the letter. (See Exhibit D, Letter from Charles Spiridon, dated July 28, 2004). There was no attempt to conceal the letter and the court correctly recognized the baseless nature of Cayer's contention to the contrary.

In contrast, Cayer should be more mindful about his own misrepresentations.

Cayer's suggestion that he would not have learned about the Judith Altman letter is false because Carol Fensterer testified that she met with Cayer in 2000 and discussed the Judith Altman matter, including the letter and video that Altman had sent to a university employee. Her testimony about her meeting with Cayer to discuss Judith Altman mentions the following:

> Q: Let me understand this. You're appalled by the video. You show the director of human resources, and your perception is that he's appalled about the video? [Exhibit E, E-mail from Fensterer, dated October 12, 2000]
>
> A: Yes.
>
> Q: But he doesn't take the video and **letter** from you?
>
> A: No.

(See Exhibit F, Deposition of Carol Fensterer, dated December 30, 2003, p. 21:14-22:10). The point to be made is that Cayer was aware of the Judith Altman materials after discussing the matter with Carol Fensterer in October 2000, some two years prior to his visit to the Attorney General's office. At any time Cayer could have requested a copy of the letter from Fensterer. So his feigned ignorance of Altman materials is a hoax.

Regarding Dr. Roach's last day of work, defense counsel represented what he understood the correct date to be. When counsel learned at the July 6, 2004 hearing that Dr. Roach's last date was actually July 30, 2004, he so informed the court promptly and no harm was done. As the court noted, there is no evidence that defense counsel intentionally misled the court. Cayer's suspicions, speculations, and assertions are not evidence.

## CONCLUSION

For all of the above reasons, Cayer's request for reconsideration should be denied and he should be ordered to comply forthwith with the court's July 12, 2004 order. The defendants renew their request for Cayer's medical records and for a new court monitored date for Cayer's deposition to be completed.

DEFENDANTS,

RICHARD BLUMENTHAL
ATTORNEY GENERAL

BY: _____
Joseph A. Jordano
Assistant Attorney General
Federal Bar # ct21487
55 Elm Street, P.O. Box 120
Hartford, CT 06141-0120
Tel: 860-808-5340
Fax: 860-808-5383
E-mail: Joseph.Jordano@po.state.ct.us

## CERTIFICATION

The undersigned hereby certifies that on this the 3rd day of August, 2004, a true and accurate copy of the foregoing was sent by United State mail, postage prepaid, to the following:

Paul Cayer
173 Old Burrville Road
Torrington, CT 06790

_____
Joseph A. Jordano
Assistant Attorney General