UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

PAUL CAYER,                        . Case No. 3:02-CV-01130
                                   . (HBF)
          Plaintiff,               .
                                   . Bridgeport, Connecticut
     v.                            . July 6, 2004
                                   .
JAMES ROACH AND                    .
                                   .
CHARLES SPIRIDON,                  .
                                   .
          Defendants.              .
. . . . . . . . . . . . .

HEARING ON OUTSTANDING MOTIONS AND
SCHEDULING ORDER
BEFORE THE HONORABLE HOLLY B. FITZSIMMONS
UNITED STATES MAGISTRATE JUDGE

APPEARANCES:

For the Plaintiff:        By: PAUL CAYER, PRO SE
                          173 Old Burrville Road
                          Torrington, CT 06790

For the Defendants:       Attorney General's Office
                          By: JOSEPH JORDANO, AAG
                          55 Elm Street, P.O. Box 120
                          Hartford, CT 06141

Electronic Court
Recorder Operator:        MS. SANDRA J. BALDWIN

Proceedings recorded by electronic sound recording.
Transcript prepared by transcription service.

---

BOWLES REPORTING SERVICE
P.O. BOX 607
GALES FERRY, CONNECTICUT 06335
(860) 464-1083

EXHIBIT NO. A

1   haven't -- that I haven't already mentioned?

2         MR. JORDANO: The only thing I'd bring to the

3   Court's attention is in Mr. Cayer's letter to the Court

4   today, he mentions Charles Spiridon's medical records,

5   and I'm not aware of any outstanding formal discovery

6   request for those records, and obviously if Mr. Cayer

7   would attempt to compel Mr. Spiridon to bring those to

8   a deposition, I would object to that. He's not a

9   defendant in this case and there's no issue on that,

10   but for the record, I'm not aware of any formal

11   discovery request in this case, from Mr. Cayer or his

12   counsel during discovery, for Mr. Spiridon's medical

13   records, at least I don't recall one. I don't have the

14   whole file in front of me. I don't recall one, Your

15   Honor.

16         THE COURT: All right. Okay.

17         Mr. Cayer, why don't we start with your

18   issues then.

19         The deposition, first of all. Is your only

20   problem with continuing your deposition, the fact that

21   you want these other things to happen?

22         MR. CAYER: Correct.

23         THE COURT: Okay. All right.

24         So you don't have any objection to the

25   deposition, in and of itself, to be --

```
 1            MR. CAYER:  Well, I do have an issue with the
 2   deposition.
 3            THE COURT:  All right.
 4            Why don't you tell me --
 5            MR. CAYER:  Attorney Jordano is implying that
 6   the deposition was to be a continuation of the first
 7   deposition which, of course, questioned me, you know,
 8   in a number of different directions, number of
 9   different areas, whereas the second final notice of
10   deposition that I was sent, and this the one -- the
11   very suspicious one that was issued on the day that I
12   fired my attorney.  That notice of redeposition only
13   dealt with matters relating to mitigation of damages.
14            So, my position would be in the event that I
15   am again redeposed, I would expect that the issue, and
16   the only issue discussed at that deposition, would be
17   the mitigation of damages issue.
18            THE COURT:  And your impression that the
19   mitigation of damages was the issue, was that based on
20   the request to bring records of that mitigation of
21   damages --
22            MR. CAYER:  Yes.
23            THE COURT:  -- to the deposition?
24            MR. CAYER:  Correct.
25            THE COURT:  Okay.  When you were at --
```

```
 1            MR. CAYER:  And excuse me, Your Honor, it was
 2   -- that was never mentioned previously in any notice of
 3   deposition, the mitigation (inaudible).
 4            THE COURT:  Okay, the -- but the -- you were
 5   deposed on one occasion before that, correct?
 6            MR. CAYER:  Correct.
 7            THE COURT:  And are you saying that you
 8   thought that your deposition was concluded at the end
 9   of that day?  That you had -- That all of the areas had
10   been covered?
11            MR. CAYER:  Not necessarily, no.
12            THE COURT:  Oh, okay.  All right.
13       (Pause.)
14            THE COURT:  All right.  Now, --
15            MR. JORDANO:  Excuse me, Your Honor.
16            Could I just indicate -- advise the Court on
17   this issue, just so the Court is clear.  The reason
18   that mitigation was brought up in the last notice was
19   because at the time I deposed Mr. Cayer, he was still
20   employed by Western Connecticut State University, and
21   he subsequently left the university and one of his
22   claims in this case, at least communicated to me
23   through his former attorney, was that he was going to
24   claim, all the sudden, that he was constructively
25   discharged, even though he retired.  That's what made
```

1   MR. JORDANO: I am, Your Honor. I am
2 contemplating a dispositive motion in this case. Once
3 we -- If we discover that I have sufficient time on it
4 to put everything together (inaudible).
5   (Pause.)
6   THE COURT: All right.
7   I would expect that you can anticipate an
8 order in this matter, early next week.
9   I'm gonna cover, in the order, the resumption
10 of Mr. Cayer's deposition, the request for the medical
11 records, the request for the depositions of Dr. Roach
12 and Ms. Barnwell, and a comprehensive schedule for the
13 case going forward.
14   It's my expectation that Mr. Cayer will
15 forward to Mr. Jordano, the e-mails that he has stored,
16 which he previously sent to Western Connecticut current
17 or former employees, and how much time would you like
18 to do that, Mr. Cayer?
19   MR. CAYER: That may take weeks, Your Honor.
20   THE COURT: Why --
21   MR. CAYER: Weeks.
22   THE COURT: -- would it take weeks?
23   MR. CAYER: Well, it's a matter of -- Well,
24 not -- Let's say -- I'd like to -- Can we say one week?
25   THE COURT: Certainly.

1       THE COURT: Well, I would not expect that
2  there would be any retaliation whatsoever against
3  anyone because they received an e-mail from you.
4       It's certainly all right if you tell them
5  that their e-mails are being disclosed. I don't think
6  there's any problem with that, but the likelihood of
7  retaliation, it would seem to me, would be very low,
8  given the kind of sanctions to which that would expose
9  the defendants if that were to be -- if that were to
10 occur.
11      MR. CAYER: I sincerely hope that's the case,
12 Your Honor.
13      THE COURT: And I'm sure that Mr. Jordano
14 will convey to them -- And as you know, Dr. --
15 Certainly, Dr. Roach is not gonna be in a position to
16 do anything anymore, since he's gonna be retired, so,
17 all right.
18      Anything else that we can resolve this
19 morning?
20      MR. JORDANO: No, Your Honor.
21      Do you (inaudible) -- Do you need any type of
22 recommendation, in terms of a schedule or timing. Do
23 you need (inaudible), Your Honor (inaudible)?
24      THE COURT: I'll hear what you have to say.
25      MR. JORDANO: Well, okay.

```
 1  happen, to happen?
 2          MR. CAYER:  I believe that the dates that
 3  Attorney Jordano has indicated are okay, and I'm sorry,
 4  I wasn't paying attention to the part about -- Did we
 5  establish a trial date or --
 6          THE COURT:  No, not yet, that -- No, he's
 7  asking for a dispositive motion date in October and --
 8          MR. CAYER:  Oh, in October?
 9          THE COURT:  Right, and then once that motion
10  is filed and decided, then the trial would be set.
11          MR. JORDANO:  We could have a -- I have two
12  big trials between now -- I'd ask for -- at the end of
13  October, because I have two trials, if that's possible,
14  okay?  And I think I'm gone for a week, just
15  anticipating the worst, Your Honor.  Thank you.
16          THE COURT:  All right.
17          MR. CAYER  Your Honor, I would like to say,
18  on the matter of my medical records, should you
19  determine that my medical records must be disclosed, I
20  obviously will do so, and I would be interested in the
21  meaning of their disclosure under a protective order,
22  as Mr. Jordano makes reference to.
23          I also obviously, in that event, would be
24  pursuing emotional distress damages on top of punitive
25  damages, and on top of economic damages.
```