CHAMBERS
HOLLY B. FITZSIMMONS
U.S. MAGISTRATE JUDGE

173 Old Burrville Rd.
Torrington, CT 06790

May 6, 2004.

2004 MAY -7 P 1: 39

FAX: 203-579-5651

Hon. Holly B. Fitzsimmons
U.S. District Court
915 Lafayette Blvd.
Bridgeport, CT 06604

RECEIVED

RE: Cayer v. Roach et al., Case # 3:02CV1130(HBF)

Dear Judge Fitzsimmons,

In Attorney Jordano's letter to you of April 23, 2004, wherein he denies lying to the Court on April 20, 2004, let me say that I have obtained a transcript of that status conference which confirms my earlier statements to you. Attorney Jordano, in his letter, employs nonsensical verbal contortions to try to persuade you that he did not lie. It is clear from the transcript that he attempted to deceive the Court about the true nature and purpose of the February 18, 2004 Re-Notice of Deposition, February 18th being the same day I fired Attorney Torre. Mr. Jordano's exact words from the transcript (see attached):

"I did send her a notice, and apparently my secretary, it's our fault, used the form and put out the change in the notice, and it said "Court Services." Mr. Cayer called me on that, and I said, "Okay, that's a typographical error. That's a error in the way it was sent out," but the medical records and the records he was told to bring with him were in the the outstanding discovery request, dating back to October of 2003."

Mr. Jordano's statements were clearly describing the February 18, 2004 Re-Notice of Deposition. Medical records were NOT listed on that notice, or on the previous Re-Notice of Deposition, for that matter. Furthermore, when he states "...records he was told to bring with him..", he refers to records relating to MITIGATION OF DAMAGES. These records were NOT listed on the outstanding discovery request, and had NEVER been requested before. A comparison of the January 20th and February 18th notices clearly shows that the February 18th notice was not simply a reissue of the earlier notice but a TOTALLY DIFFERENT notice designed to convey the impression to me, FOR THE VERY FIRST TIME, just as I was firing my attorney, that a settlement of my case was imminent. One can very easily infer from the facts, that on February 18th, the day I fired Attorney Torre, she called Mr. Jordano to tell him to issue a Re-Notice of Deposition worded in such a way as to convey to me that a settlement was imminent. The fact that he would agree to do such a thing is strongly suggestive of a sweetheart arrangement between the two of them. Even before this incident, I was already very suspicious.

Let me also say that Attorney Jordano, just like the defendants he is representing, never misses an opportunity to invent reasons why my medical records need to be disclosed. The transcript shows (see attached) that he stated the following with respect to my medical records:

".....I'd like to see his history and his records, because I can't cross-examine that doctor and the statements until I see them, okay. So I think the material on those issues, I think the material on his behavior, and I say that because just in the time that I've dealt with him as a pro se, this type of motion is the typical type of thing I've received from him, where he makes accusations and stuff, accuses me of all kinds of things. So I think I have an independent basis, good faith basis, whether he stipulates to damages or not. I think I'm entitled to see those records and I'm gonna ask the Court, given the circumstances, to make him produce them."

Your Honor, when my case is finally adjudicated, and I tell the story of my experience of whistleblower retaliation, it will clearly show that the Attorney General's Office, in their vigorous defense of my employer, actually became complicit in the acts of retaliation against me. I continue to be punished for SPEAKING THE TRUTH, and the punishment now is being meted out by Attorney Jordano. I frankly consider his actions to be disgraceful, and serve to underscore the

need for legislation to protect whistleblowers from retaliation. Unfortunately, the current law is clearly not working, and I will be contacting the legislature to request that this be revisited. I have also copied Attorney General Blumenthal on this and other recent communications, as I cannot believe that he would condone Mr. Jordano's tactics.

I respectfully request that your Honor consider my remarks when ruling on my request to reopen discovery for the Roach and Barnwell depositions, as well as my objection to Mr. Jordano's request for my medical records.

Very truly yours,

*[signature]*

Paul N. Cayer, pro se

cc: Attorney General Blumenthal
Atty. Joseph Jordano

1   with what your testimony is, and to the extent that
2   they're not consistent, they may be fodder for cross-
3   examination.  All right.
4              Is there any outstanding request for your
5   psychiatric records?
6              MR. CAYER:  (No audible response.)
7              THE COURT:  And was it part of that request
8   for --
9              MR. CAYER:  It was part of that request.
10             THE COURT:  Okay.  Okay.
11             Is there anything else that you would like to
12  say on any of these issues, Mr. Cayer?
13             MR. CAYER:  I believe that's it, Your Honor.
14             THE COURT:  All right, thank you.
15             Mr. Jordano?
16             MR. JORDANO:  Yes, Your Honor.  I want to
17  respond briefly to Mr. Cayer's objection here.  I just
18  received it today.
19             Couple of things.  Mr. Cayer did call me when
20  a -- When the notice went out for the second
21  deposition, I had one scheduled for January 20th,
22  before discovery closed, and because of a conflict in
23  schedules that had to be continued, and I talked to Ms.
24  Torre about that beforehand, and because it was noticed
25  in before the close of discovery, we agreed that we

1  would take care of it forthwith after that.  There was
2  a conflict on the twentieth.  I can't remember if it
3  was her's or mine, but there was a conflict.
4       I did send her a notice, and apparently my
5  secretary, it's our fault, used the form and put out
6  the change in the notice, and it said "Court Services."
7       Mr. Cayer called me on that, and I said,
8  "Okay, that's a typographical error.  That's a error in
9  the way it was sent out," but the medical records and
10 the records he was told to bring with him were in the
11 outstanding discovery request, dating back to October
12 of 2003.
13      The other thing on that, Judge, is I think
14 there are several independent bases for those records,
15 and I'm loathe to suggest to Mr. Cayer, even -- I'm
16 even cautious to -- I mean, I wouldn't begin to tell
17 him what he needs to do in this case, but I am
18 reluctant to accept a stipulation at this time, given
19 the nature of the communications he has sent me.  He
20 continually sends me correspondence where he accuses me
21 of things, where he threatens me that if I don't settle
22 this case, if I don't do this, he'll go to the paper
23 and this and that, and I've written him back and told
24 him that that's not productive.
25      Given the nature of these statements he's

1  case, is that we fabricated the workplace violence
2  complaint against him, and that we trumped it up, okay,
3  and we sent him for psychological exam and he -- had
4  one of his own doctors send back a response for his
5  personnel -- I'd like to see his history and his
6  records, because I can't cross-examine that doctor and
7  the statements until I see them, okay.
8  　　　　So I think the material on those issues, I
9  think the material on his behavior, and I say that
10 because just in the time that I've dealt with him as a
11 pro se, this type of motion is the typical type of
12 thing I've received from him, where he makes
13 accusations and stuff, accuses me of all kinds of
14 things.
15 　　　　So I think I have an independent basis, good
16 faith basis, whether he stipulates to damages or not.
17 I think that I'm entitled to see those records and I'm
18 gonna ask the Court, given the circumstances, to make
19 him produce them.  That certainly is part of his claim,
20 and I don't -- I have no doubt at trial, because he's
21 not a lawyer, he may attempt to bring in evidence about
22 humiliation or reputation, or whatever, and this is
23 gonna be issues.  I think we should just have it all on
24 the table, and I'm gonna ask the Court to compel that
25 disclosure.